IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATHER TIDWELL, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>YWCA OF GREATER HARRISBURG,<br>　　　　Defendant | No. 1:22cv908<br><br>(Judge Munley) |

## MEMORANDUM

Before the court is Plaintiff Heather Tidwell's motion for collective action certification pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.* (Doc. 40). Plaintiff is a former employee of Defendant YWCA of Greater Harrisburg ("YWCA"). She filed the instant case alleging that YWCA failed to pay overtime wages to plaintiff and other similarly situated employees. Plaintiff now moves for conditional approval of an FLSA collective action and requests that the court facilitate notice to potential members of the opt-in class. YWCA opposes with arguments and evidence challenging the merits of plaintiff's claims. The parties have briefed their respective positions and this matter is now ripe for disposition.[1]

---

[1] The Honorable Jennifer P. Wilson transferred this matter to the undersigned on November 7, 2023.

## Background

Plaintiff brings claims against her former employer pursuant to the FLSA and state labor statutes. YWCA is a non-profit community organization and plaintiff's employment involved helping vulnerable people with unstable housing, including veterans of the armed forces.[2]

YWCA employed plaintiff as a resource development specialist ("specialist") and case manager from April 2019 to November 2021. When she served as a specialist from April 2019 to June 2020, YWCA tasked plaintiff with creating and maintaining connections with community resources for YWCA clients to utilize. (Doc. 31, Ans. to 4th Amend. Compl., ¶¶ 15, 19a). Per plaintiff, specialists also assisted case managers with overflow client casework and assisted clients who needed more intensive services to obtain employment. (Doc. 49-2, Dep. of H. Tidwell, 24:11-25). As a specialist, plaintiff transported clients to job interviews and to work locations. (Id., 25:11-21).

Plaintiff then moved into a case manager role in July 2020. (Id., 27:9-19). In that role, plaintiff maintained a caseload of about twenty (20) clients, meeting them weekly, helping them stabilize their housing, and providing them with

---

[2] This background is derived from YWCA's answer, plaintiff's deposition, and other discovery materials provided in conjunction with this motion. On a motion for conditional certification of an FLSA action, the court does not dispose of the merits of plaintiff's claim, decide credibility issues, or resolve factual disputes. See Bellan v. Capital BlueCross, 496 F.Supp.3d 854, 858 (M.D. Pa. 2020)(citation omitted); Dunkel v. Warrior Energy Servs., Inc., 304 F.R.D. 193, 199 (W.D. Pa. 2014).

furniture and supplies. (Id., 31:10-32:8). She transported people to work and to appointments and would meet clients after work to ensure they had groceries. (Id.) Plaintiff's clients were not centralized in Harrisburg and her client needs might take her from York to Carlisle to Lebanon on certain days. (Id., 34:3-13). She testified that she was not in an office setting very often. (Id., 34:1-2).

Plaintiff worked for YWCA as a case manager until October 2021. (Id., 118:21-23). In both the specialist and case manager roles, plaintiff reported to the same director. (Id., 26:15-17, 31:6-9).

Defendant initially hired plaintiff as a salaried employee. (Doc. 31, Ans. to 4th Amend. Compl., ¶ 14). On January 1, 2020, defendant transitioned plaintiff and others to an hourly rate. (Id.). Per plaintiff, she understood that she could not exceed 37.5 hours of work per week under this classification. (Doc. 49-2, Dep. of H. Tidwell, 24:11-25). The nature of her position and the needs of her clients, however, required many more working hours, sometimes more than forty (40) hours per week. (Id., 105:13-23). She testified that her director told her not to work more than the 37.5 hours permitted by the paper policy but also pressured her to work more hours to meet the needs of YWCA's clients. (Id., 106:7-9). Per her testimony, she was unable to go off-duty until the work was done. (Id., 28:19-21).

Plaintiff logged her work hours using different methods: through calendaring software, a payroll system, and a spreadsheet. (Id., 32:18-23). For payroll purposes, she would record her hours worked using Automatic Data Processing ("ADP") software. (Id., 36:1-16). Per plaintiff, however, these entries were edited, and she was advised by her director to stop logging more than 37.5 hours per week. (Id., 36:17-37:5). The director also indicated he was instructed by YWCA's upper management that workers would not be paid for more than 37.5 hours of work so it was futile to record more than that time. (Id., 37:20-38:15). Plaintiff testified that the director's comments came at a team meeting with other employees present. (Id.) She alleges that the other employees were subject to the same treatment. (Id., 66:20-67:7). Two other case managers advised plaintiff that the director also told them not to record all their work hours in the ADP system. (Id., 52:8-53:1, 55:6-56:11). Plaintiff believes the director took that position because, "[t]here was a higher mission to the Y and that sometimes meant working a lot more." (Id., 53:1-5).

Plaintiff now moves to conditionally certify an FLSA collective action regarding the overtime claims. The proposed collective includes an estimated forty-one (41) members, specifically two (2) specialists and thirty-nine (39) case managers. (Doc. 41-5, Exh. 4). Plaintiff also asks for approval of her proposed notice and opt-in consent form. (Docs. 41-7, 41-8). She also requests that notice

of this action be posted in the breakroom of YWCA's workplaces. YWCA counters that plaintiff failed to show that other YWCA employees are similarly situated to her and that, if this matter is conditionally certified, plaintiff's proposed dissemination of notice would cause confusion in its workplace. The parties have fully briefed their respective positions, bringing this case to its present posture.

**Jurisdiction**

Plaintiff asserts claims under the FLSA, Pennsylvania's Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.*, and Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* Based on the alleged violations of federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

The FLSA has a broad remedial purpose, and its central aim is to achieve certain minimum labor standards. Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 329 (3d Cir. 2016)(citing Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960); De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 373 (3d Cir. 2007)). Among other things, the FLSA establishes overtime guarantees that cannot be modified by contract. Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013). It provides a private cause of action against an employer for failing to pay overtime for a workweek of more than forty (40) hours. In re Citizens Bank, N.A., 15 F.4th 607, 611 (3d Cir. 2021)(citing 29 U.S.C. § 207(a)).

Section 216(b) of the FLSA also "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA." Genesis Healthcare Corp., 569 U.S. at 69 (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169–170(1989)). Put another way, it establishes a "vehicle" for managing claims of multiple employees against a single employer. Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 223 (3d Cir. 2016); see also 29 U.S.C. 216(b). The FLSA collective action mechanism is subject to the requirement that no employee shall become a party plaintiff unless they give consent in writing to become such a party and that consent is filed in court. See 29 U.S.C. § 216(b).

Each employee must opt-in as a plaintiff by filing affirmative consent to join the collective action. Halle, 842 F.3d at 224.

Certification of an FLSA collective action proceeds in two steps: (1) conditional certification and (2) final certification. Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 535–36 (3d Cir. 2012). At step one, a plaintiff must make a "modest factual showing" that putative opt-in employees may be provisionally categorized as similarly situated to the named plaintiff, meaning "some evidence, beyond pure speculation, of a factual nexus, between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Id. at 536, n. 4 (citing Symczyk v. Genesis HealthCare Corp., 656 F.3d 189 (3d Cir. 2011), rev'd on other grounds, 569 U.S. 66 (2013)). Simply stated, a "fairly lenient standard" applies at the conditional certification stage. Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013)

At step two, the final certification stage, the Third Circuit directs courts to take an ad-hoc approach to the "similarly situated" question, considering all relevant factors and making a factual determination on a case-by-case basis. Zavala, 691 F.3d at 535–36. At the second stage, a plaintiff must show by a preponderance of evidence that the other employees are similarly situated. Id. at 537.

Because the parties have conducted some discovery into the named plaintiff's claim, defendant requests that the court apply a higher standard of factual scrutiny on conditional certification, a "heightened, intermediate standard." (Doc. 49 at 9). Other judges in the Middle District of Pennsylvania have analyzed the discovery record on a motion for conditional certification using an intermediate standard. See e.g. Messenger v. Cabot Oil & Gas Corp., 3:19-CV-308, 2021 WL 2530614, at *3 (M.D. Pa. June 21, 2021)(Mannion, J.); Skaggs v. Gabriel Bros., Inc., 1:19-CV-02032, 2021 WL 254113, at *6 (M.D. Pa. Jan. 26, 2021)(Wilson, J.); Sloane v. Gulf Interstate Field Servs., Inc., 4:16-CV-01571, 2017 WL 1105236, at *6 (M.D. Pa. Mar. 24, 2017)(Brann, J.).

To date, however, the Third Circuit has not endorsed the application of a heightened standard at the conditional certification stage.[3] See Given v. Love's Travel Stops & Country Stores, Inc., 1:17-CV-1266, 2018 WL 925996 at *2, n.1 (M.D. Pa. Feb. 16, 2018)(Conner, J.). "District courts have generally found that a more heightened standard at the conditional certification stage is not appropriate when discovery has not been concluded, no plaintiffs have opted-in, and/or the

---

[3] Essentially, YWCA requests that the court adopt the Sixth Circuit's approach to conditional certification. See Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003, 1011 (6th Cir. 2023)(requiring plaintiffs to show a "strong likelihood" that employees are similarly situated to the plaintiffs themselves before a district court can facilitate notice of an FLSA suit to other employees).

8

case is not ready for trial." Bowser v. Empyrean Servs., LLC, 324 F.R.D. 346, 351 (W.D. Pa. 2018)(collecting cases).

Here, the discovery record consists of answers to interrogatories, named plaintiff's deposition, and affidavits from witnesses supporting YWCA's position that plaintiff's allegations lack merit. No other individuals have joined named plaintiff prior to this motion. To the extent that other judges in this district apply a higher standard with a more fulsome discovery record, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 563 U.S. 692, 709 (2011)

Moreover, at the conditional certification stage, the court need not conclusively determine whether the proposed collective plaintiffs are similarly situated. Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees." Genesis HealthCare Corp., 569 U.S. at 75; see also Zavala, 691 F.3d at 536 ("[T]he conditional certification is not really a certification. It is actually the district court's exercise of [its] discretionary power. . .to facilitate the sending of notice to potential [collective] members[.]")(citations and internal quotation marks omitted). Moreover, an FLSA collective action is not a class action. Conditional

certification is "not tantamount to class certification under Rule 23." Genesis HealthCare Corp., 569 U.S. at 78.

Thus, to obtain conditional certification here, plaintiff need only make a modest factual showing with some non-speculative evidence that demonstrates a factual nexus between the way the employer's alleged policy affected her and the manner in which it affected the putative plaintiffs. See Halle, 842 F.3d at 224 (citing Zavala, 691 F.3d at 536, n. 4). In other words, a plaintiff must show three things: (1) an employer policy, (2) affected the plaintiff in a particular way, and (3) the policy also affected other employees in a similar way. See Dunkel v. Warrior Energy Servs., Inc., 304 F.R.D. 193, 200 (W.D. Pa. 2014).

**Analysis**

Plaintiff's motion contains two issues to resolve. The court will first address whether she has demonstrated a factual nexus between herself and other employees before turning to her method of proposed notice.

**1. Factual Nexus**

Regarding the first issue, plaintiff has offered testimony that YWCA's overtime policies create a common claim for unpaid wages for the two (2) specialists and the thirty-nine (39) case managers.

Despite any paper policy, plaintiff testified that YWCA had a policy that employees would not be compensated for work hours in excess of 37.5 hours

each week. (Doc. 49-2, Dep. of H. Tidwell, 24:11-25, 105:13-23, 106:7-9). She testified that she was not compensated for such time over this limit, and she worked more than forty (40) hours per week. (Id., 59:22-60:5, 81:12-82:6, 92:10-93:6)

Plaintiff also testified that YWCA's spoken policies impacted other employees. First, plaintiff has connected these policies to both specialists and case managers through her testimony that she was subject to the policy in both roles. (Id. 28:25-30:19, 92:10-6, 140:25-141:23). Additionally, per plaintiff, her job duties as a specialist and case manager overlapped. Specialists would handle overflow cases for case managers and both roles involved transporting clients. (Id., 24:11-25, 25:11-16, 31:10-32:5). Plaintiff also reported to the same director in both roles, and he supervised other employees within the veterans department. (Id. 8:23-9:1, 26:15-17, 31:6-9).

Next, plaintiff offered testimony that other case managers were subject to the same policy. Their common supervisor advised at least four other case managers in the veterans department that they would not be paid for time exceeding 37.5 hours and that recording hours in excess of that amount would be futile. (Id. 36:25-38:1, 39:6-10). Coworkers later informed plaintiff that they worked in excess of 37.5 hours and were not compensated for such time. (Id. 66:20-67:7, 88:5-18). She testified that another case manager in a different

11

department was subject to the same policy and that individual reached out to her during the litigation. (Id. 92:25-93:17, 96:13-20).

YWCA's arguments opposing conditional certification largely rely on credibility assessments or its merits-based defenses. Such arguments are more properly considered at the stage of final certification. See Bellan, 496 F.Supp. 3d at 859(citation omitted); Bowser, 324 F.R.D. at 352. Accordingly, the court finds that plaintiff has made the modest factual showing required for conditional certification.

**2. Notice**

The parties disagree on the way notice is to be disseminated to the putative class members. Plaintiff seeks an order compelling YWCA to "conspicuously post the notice in the break rooms at its locations until the opt-in period closes and authorize plaintiff to disseminate notice to the affected employees at their mailing address." (Doc. 41, Br. in Supp., p. 20). YWCA contests the posting of notice on its premises, arguing that it has the potential to cause significant and unnecessary confusion among its employees. (Doc. 49, Br. in Opp., p. 25).

District courts enjoy discretion in directing notice to potential opt-in plaintiffs. Bellan, 496 F.Supp. 3d at 860 (citing Hoffmann-La Roche Inc., 493 U.S. at 170). Under the circumstances, plaintiff's proposed method of dissemination is reasonable and courts within the appellate jurisdiction of the Third Circuit

permit posting at work sites of the defendant. See Garcia v. Vertical Screen, Inc., 387 F.Supp. 3d 598, 608 (E.D. Pa. 2019)(citing Archer v. Defs., Inc., 18-CV-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018). Accordingly, plaintiff's proposed order regarding the opt-in notice and dissemination will be adopted by the court.

**Conclusion**

For the reasons set forth above, plaintiff's motion for conditional certification (Doc. 40) will be granted. An appropriate order follows.

Date: 4/29/24

JUDGE JULIA K. MUNLEY
United States District Court