### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATHER TIDWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YWCA OF GREATER HARRISBURG,<br><br>Defendant. | CIVIL ACTION - LAW<br><br>NO.: 1:22-cv-908-SES |

### BRIEF IN SUPPORT OF PLAINTIFFS'
### UNOPPOSED MOTION TO APPROVE
### <u>COLLECTIVE ACTION SETTLEMENT AND ATTORNEY FEES</u>

**TABLE OF CONTENTS**

I.    Background                                                                  3

II.   Facts and Procedural History                                               4

III.  Settlement Terms                                                           7

IV.   Argument                                                                   11

    A. The Court Should Approve the FLSA Collective Action Using        11
       The FLSA's One-Step Standard for Approving Collective Action
       Settlements

        i.  The Putative Opt-In Class Members are Similarly Situated      14

        ii. The Proposed Settlement Is the Product of Contested           15
           Litigation

        iii.  The Proposed Settlement Reflects a Fair and Reasonable       15
           Resolution of a Bona Fide Dispute Between the Parties

           a.  A Bona Fide Dispute Existed Between the Parties          16

           b.  The Proposed Settlement Is Fair and Reasonable          16

              1.  Public Policy Favors Settlements                   17

              2.  Substantial Obstacles Exist if the Litigation       18
                 Continues,
                 and the Settlement Offers Substantial, Immediate
                 Relief

              3.  This Was a Complex and Potentially Lengthy Case    20

              4.  The Parties and Their Counsel Support the           20
                 Settlement

    B. The Court Should Approve Class Counsel's Separate Award of        21
       Attorneys' Fees and Litigation Expenses

i

    i.  The FLSA Requires a Separate Award of Attorneys' Fees and Litigation Expenses    21

        a.  Class Counsel's Request for Attorneys' Fees of One-Third of the Global Settlement Fund is Reasonable    23

            1.  The Size of the Fund Created and the Number of Beneficiaries, as Well as the Value of the Benefits Supports the Requested Fee    26

            2.  The Skill and Efficiency of Class Counsel that Enabled them to Obtain this Result, the Complexity of the Litigation, and the Risk of Nonpayment Support the Requested Fee    28

        b.  The Awards in Similar Cases Supports the Requested Fee    30

        c.  The Court Should Approve Class Counsel's Reasonable Litigation Expenses    32

V. Conclusion    32

## **TABLE OF AUTHORITIES**

### **Cases**

*Alvarez v. BI Inc.*,
2020 U.S. Dist. LEXIS 60656 (E.D. Pa. Apr. 6, 2020).                    11, 12

*Andersen v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946).                                                    23

*Bredbenner v. Liberty Travel, Inc.,*
2011 U.S. Dist. LEXIS 38663 (D.N.J. April 8, 2011).                    26

*Brooklyn Sav. Bank v. O'Neil,*
324 U.S. 697 (1945).                                                   22

*Brumley v. Camin Cargo Control, Inc.,*
CIV.A. 08-1798 JLL, 2012 U.S. Dist. LEXIS 4059  (D.N.J. Mar. 26,
2012).                                                                 14

*Cheeks v. Freeport Pancake House, Inc.,*
796 F.3d 199 (2d Cir. 2015).                                           23

*City of Burlington v. Dague,*
505 U.S. 557 (1992).                                                   22

*Collins v. Sanderson Farms, Inc.,*
568 F. Supp. 2d 714 (E.D. La. 2008).                                   12

*Copeland v. ABB, Inc.,*
521 F.3d 1010 (8th Cir. 2008).                                         22

*Fein v. Ditech Fin., LLC,*
2017 U.S. Dist. LEXIS 158479 (E.D. Pa. Sept. 27, 2017).                30

*Galt v. Eagleview Hospital*,
310 F. Supp. 3d 483 (E.D. Pa. Apr. 19, 2018).                          28-31

*Gunter v. Ridgewood Energy Corp.,*
223 F.3d 190 (3d Cir. 2000).                                           14-26, 30

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
842 F.3d 215 (3d Cir. 2016).                                              11

*Hill v. World Wide Tech. Holding Co., Inc.*,
2012 U.S. Dist. LEXIS 153264 (E.D. Mo. Oct. 25, 2012).                   13

*Huyett v. Murlin*,
2018 U.S. Dist. LEXIS 108012 (M.D. Pa. June 28, 2018).                   12

*In re AT&T Corp.,*
455 F.3d 160 (3d Cir. 2006).                                             24

*In re Cendant Corp. Sec. Litig.,*
404 F.3d 173 (3d Cir. 2005).                                       24, 26, 28

*In re Diet Drugs,*
582 F.3d 524 (3d Cir. 2009).                                          24, 25

*In re King Resources Co. Securities Litig.,*
420 F. Supp. 610 (D. Colo. 1976).                                        19

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3d Cir. 2005).                                          24, 26

*Lynn's Food Stores, Inc. v. U.S.*,                                 2, 12-14,
679 F.2d 1350 (11th Cir. 1982).                                       17, 18

*Maddy v. Gen. Elec. Co.*,
2017 U.S. Dist. LEXIS 98802 (D.N.J. June 26, 2017).                      30

*Morales v. Farmland Foods, Inc.*,
2013 U.S. Dist. LEXIS 56501 (D. Neb. Apr. 18, 2013).                     23

*Nichols v. SmithKline Beecham Corp.*,
2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005).                     28

*Oppenlander v. Standard Oil Co.*,
64 F.R.D. 597 (D. Colo. 1974).                                           19

iv

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999).                                          18

*Prasker v. Asia Five Eight LLC*,
2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010).                    23

*Rouse v. Comcast Corp.*,
2015 U.S. Dist. LEXIS 49347 (E.D. Pa. Apr. 15, 2015).                 31

*Sakalas v. Wilkes-Barre Hosp. Co.*,
2014 U.S. Dist. LEXIS 63823 (M.D. Pa. May 28, 2014).                  24

*Sand v. Greenberg*,
No. 08-CV-07840, 2010 U.S. Dist. LEXIS 1120 (S.D.N.Y. Jan. 7,
2010).                                                                 23

*Shatzer v. Springwood Hospitality, LLC,*
No. 1:24-cv-1244 Order Granting Motion for Settlement and Attorney
Fees, ECF Nos. 37-41 (M.D. Pa. February 12, 2026).                    27

*Simmons v. Enterprise Holdings, Inc.*,
2012 U.S. Dist. LEXIS 97463 (E.D. Mo. July 13, 2012).                 13

*Southwood v. Milestone Mgmt. PA- Feasterville, LLC*,
2020 U.S. Dist. LEXIS 169312 (E.D. Pa. Sept. 15, 2020).               31

*Tompkins v. Farmer's Ins. Exch.*,
2017 U.S. Dist. LEXIS 158478 (E.D. Pa. Sept. 27, 2017).               30

*Williams v. Bethanna*,
2019 LEXIS  7350 (E.D. Pa., January 15, 2019).                        13

*Zavala v. Wal Mart Stores Inc.*,
691 F.3d 527 (3d Cir. 2012).                                          11

**Statutes**

29 U.S.C. §§ 201-219                                              2, 14, 21,
                                                                         22

43 P.S. § 333.101 *et seq*.                                                    4

43 P.S. 260.1 *et seq*.                                                        4

Fed. R. Civ. P. 23                                                        11, 12,
                                                                           15, 19

Heather Tidwell ("Ms. Tidwell" or "Named Plaintiff"), respectfully moves for approval of the Settlement reached in this Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA") collective action on behalf of all persons who opted into this litigation who were employed by YWCA of Greater Harrisburg ("YWCA" or "Defendant") and who allege they were not paid for hours worked in excess of 37.5 hours each workweek, including overtime hours, worked on behalf of YWCA during the applicable statute of limitations period commencing January 25, 2019. Named Plaintiff and all persons employed as Resource Development Specialists or Case Managers by YWCA opting in to this litigation (collectively "Plaintiffs") constitute a collective under the FLSA. To effectuate a binding release, FLSA settlements generally require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (FLSA rights may be released by stipulated judgment). A copy of the Parties' confidential Settlement Agreement and Release of Claims ("Settlement Agreement") is attached hereto as Exhibit 1. Named Plaintiff respectfully requests that this Honorable Court enter an Order granting the accompanying Motion and approving the Parties' Settlement. Plaintiff submits the following in support thereof.

## I. Background

Named Plaintiff and Defendant have reached a settlement of this FLSA collective action that provides participating Plaintiffs monetary relief of their alleged unpaid wages, between January 25, 2019 through present or their date of separation of employment with Defendant, after payment of attorneys' fees and related expenses.[1] This outcome is a model of efficient resolution, achieved in the case by experienced counsel for both sides, with minimal burden on the Court. The Settlement should be approved.

Settlement was reached after the Parties' investigation of the facts, production by Defendants of case-critical payroll and time records, written and verbal correspondence with Named Plaintiff and other collective members by Named Plaintiff's counsel, and significant settlement negotiations between counsel for each of the Parties to bring about a resolution. In order to settle this matter, Defendant has agreed to pay a "Gross Settlement Amount" of $90,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff

---

[1] All statements made herein regarding monetary relief to the participating collective of their alleged unpaid wages, and a total FLSA Settlement Fund of $58,582.58, reflect the relief that would be provided under the terms of the Parties' Settlement Agreement if this Court approves the settlement and the requests for attorneys' fees and costs in the amounts requested herein. Should the Court approve the settlement and award attorneys' fees and costs in amounts less than the amounts requested, the amount of the FLSA Settlement Fund and individual awards for each participating class member will increase, as the FLSA Settlement Fund is equal to the difference between the Global Settlement Amount of $90,000 and the amounts awarded as attorneys' fees and costs.

Collective for unpaid wages that were alleged in the Lawsuit.  The Gross Settlement Amount shall be allocated as follows: (1) $58,582.58 shall be allocated to pay the claims of the FLSA Settlement Collective (the "FLSA Settlement Fund"), and (2) $31,417.42, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs.

Based on the time and payroll data exchanged by the Parties and their independent investigation of the relevant facts, including discussions with each Plaintiff who elected to opt in to this lawsuit after receiving notice, Plaintiffs' counsel believes the $58,582.58 FLSA Settlement Fund provides participating Plaintiffs monetary relief of significant amount of their alleged unpaid wages for alleged off-the-clock work, between January 25, 2019 through present or their date of separation of employment with Defendant, free and clear of attorneys' fees and costs.

## II. Facts and Procedural History

On July 2, 2020, Named Plaintiff filed her initial Complaint in the Court of Common Pleas of Dauphin County, Pennsylvania, a class and collective action against Defendant on behalf of herself and others similarly situated alleging that they violated the FLSA, the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. 260.1 *et seq.* and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 *et seq.* Defendant removed the case to this Court

(Doc. 1). Named Plaintiff's operative Complaint was filed on December 23, 2022 (ECF No. 27). Named Plaintiff claimed that employees paid on an hourly basis were not paid for hours worked in excess of 37.5 hours each workweek, including overtime hours worked under the FLSA, PMWA, and PWPCL.

Named Plaintiff motioned for conditional collective certification on August 28, 2023 (ECF Nos. 40-41). Defendant opposed the Motion. ECF No. 49. On April 29, 2024, this Court granted Name Plaintiff's Motion and granted conditional certification on behalf of the following collective: "All resource development specialists and case managers employed by Defendant YWCA of Greater Harrisburg from January 25, 2019 to the present." ECF Nos. 51-52. The Court authorized notice to op-in to the case to be mailed to the collective. Seven (7) members of the putative collective opted into the lawsuit. *See* ECF Nos. 53-56, 59-61. Specifically, the following individuals opted into the lawsuit: Tiara Baines f/k/a Tiara Gibson; Nereida Benitez; Leslie Demby; Andrea Haynes; Tamiesha Lyons; Jamie Shaffer; and Latoya Washington (collectively with Named Plaintiff, "Plaintiffs").

Following the close of the opt-in period, the Parties attended a settlement conference before Chief Magistrate Judge Daryl F. Bloom on February 19, 2025. *See* ECF No. 69. The settlement conference did not result in resolution of the matter despite the Parties' best efforts. Following the conference, the parties

exchanged additional written discovery. On October 2, 2025, at the request of the Parties, the case was referred to Magistrate Judge Susan E. Schwab for attendance at a second settlement conference. An initial telephone conference was held between Counsel for the Parties and Judge Schwab on November 20, 2025. A status conference was held on January 7, 2026, and, soon thereafter, a settlement agreement was reached on January 14, 2026, following arms-length negotiations between counsel for the parties, facilitated by Judge Schwab. The attorneys who negotiated this agreement are experienced wage and hour litigators and vigorously represented their clients' respective interests.

In preparation for the settlement conferences and ongoing months-long settlement discussions, the Parties conducted investigations into the underlying claims and defenses and exchanged information to ensure informed and constructive settlement discussions. The Parties exchanged critical Collective payroll and compensation data, and Plaintiffs' counsel consulted the Named Plaintiff and others electing to opt in to the litigation after receiving notice. In preparation for the Mediation Conferences and ongoing settlement discussions, the Parties evaluated the payroll data, as well as defenses which Defendant intended to raise to Plaintiffs' claims. Negotiations were robust as both sides zealously advocated their interests. As a result of discussions amongst the attorneys, the Parties were able to reach a mutually acceptable settlement.

6

## III.    Settlement Terms

The Parties have executed a Settlement Agreement that allows all Plaintiffs opting in to this litigation to participate in a settlement of the wage and hour claims asserted in this action.  The Collective is defined as: "All resource development specialists and case managers employed by Defendant YWCA of Greater Harrisburg from January 25, 2019, to the present." ECF Nos. 51-52. There are eight (8) people in the class: Tiara Baines f/k/a Tiara Gibson; Nereida Benitez; Leslie Demby; Andrea Haynes; Tamiesha Lyons; Jamie Shaffer; Heather Tidwell; and Latoya Washington.

The Settlement Agreement and Release of Claims provides for a "Gross Settlement Amount" of $90,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff Collective for unpaid wages alleged in the lawsuit.  The Gross Settlement Amount will be allocated as follows: (1) $58,582.58 shall be allocated to pay the claims of the FLSA Settlement Collective (the "FLSA Settlement Fund"), and (2) $31,417.42, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs.

Each Collective Member's individual settlement payment was determined on a *pro rata* basis by the total number of workweeks each Collective Member worked for the YWCA during the relevant period. Settlement payments to members of the FLSA Settlement Collective shall be treated as 100% wages, to be

reported on IRS Form W-2.  Payments that are issued from the FLSA Settlement Fund shall reflect all applicable withholdings and previously authorized deductions.

Plaintiffs' Counsel engaged in numerous discussions with Named Plaintiff and Counsel for Defendant to determine the scope of Plaintiffs' claims and the defenses which would be asserted.  Based upon these discussions, Plaintiffs' counsel determined that questions existed with respect to the extent of proof available to illustrate off-the-clock work.  Furthermore, arguments were raised by Defendant that it acted in good faith and that it was not aware of off-the-clock work conducted by Plaintiffs. The FLSA Settlement Fund, therefore, provides compensation to participating Collective Members for alleged off-the-clock pay for an average of $90 per workweek for each week worked by each Plaintiff in the relevant period, exclusive of attorneys' fees and costs. The average settlement payment issued to each Plaintiff is $7,322, a significant award for a collective- or class-action settlement.

Only those who affirmatively opted in to this litigation will release their alleged claims.  The Release provision is narrowly tailored to the wage claims asserted in the case, and applies only to those collective members  who opted in to this litigation.  "Released Claims" is defined in the Settlement Agreement, *in toto*, as follows:

"Released Claims" means any and all charges, complaints, claims, obligations, demands, actions, rights, causes of action, liabilities, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages) of any kind, whether known or unknown, that Named Plaintiff and/or Plaintiffs have or might have had against Defendant or any Defendant Releasee in connection with the facts, transactions, occurrences, acts or omissions alleged in the Complaint, or that could have been asserted in the Litigation based on the facts alleged in the Complaint from three years prior to the filing of the Complaint through the date of signature of this Settlement Agreement by the Named Plaintiff, arising under the FLSA, or under any state or local law, whether known or unknown, and whether anticipated or unanticipated, including claims for wages, overtime pay and overtime premium pay, per diem payments, claims for missed meal and or rest periods, claims of retaliation, penalties, liquidated damages, interest, attorneys' fees, litigation costs, or equitable relief, arising out of Defendant's alleged failure to properly compensate Plaintiffs.

*See*, Ex. 1, Settlement Agreement, Section 1.10.

The Settlement Agreement also includes two limited non-monetary terms: a limited confidentiality provision and a no-reemployment provision. The confidentiality provision reads as follows:

"Plaintiffs agree that they will keep the terms of this Agreement completely confidential and not disclose (whether in person, by telephone, electronically, through the internet, or via any other mode of communication) any information concerning the Agreement to anyone, provided that the Plaintiffs may make such disclosures to their spouses, legal counsel, accountant, and tax adviser (if any), provided that a commitment is obtained from such person not to disclose the existence or terms of this Agreement, to carry out or enforce the terms of this Agreement, or for legitimate law enforcement or legal compliance purposes. Any violation of this confidentiality requirement will be treated as a material breach of this Agreement and will entitle the YWCA to any and all damages available in law or equity."

9

*See*, Ex. 1, Settlement Agreement, Section 2.8.

The no-reemployment provision reads as follows:

> "Plaintiffs agree that, in consideration of the benefits set forth in this Agreement, they (each individually) will not seek future employment with the YWCA. Should any of the individual Plaintiffs apply for such a position, their application will not be considered. In the event that any of the individual Plaintiffs is hired by an agent or employee of the YWCA who is not aware of this Agreement, the individual Plaintiff shall be discharged upon discovery of the terms of this Agreement. The Plaintiffs further agree that their execution of this Agreement is good and sufficient cause for the YWCA to reject any application an individual Plaintiff may make for employment or re-employment or to discharge such individual Plaintiff from employment."

*See*, Ex. 1, Settlement Agreement, Section 2.9.

To confirm that each Plaintiff understood and agreed to the two non-monetary requirements, each Plaintiff separately reviewed and executed the Settlement Agreement, representing that she read and understood the provisions of the agreement. *See*, Ex. 1, Settlement Agreement, Section 2.8.

Procedurally, the Parties agree that within thirty (30) days of the Court's Order approving the settlement, Defendant will issue payment to the Plaintiffs.

10

## IV. Argument

### A. The Court Should Approve the FLSA Collective Action Using The FLSA's One-Step Standard for Approving Collective Action Settlements

This lawsuit was settled on behalf of eight (8) Plaintiffs (including Named Plaintiff) who had previously elected to participate in the litigation by filing a Consent to Join form pursuant to Section 16(b) of the FLSA. Approval of settlements under this FLSA framework are single-step (unlike Rule 23's two-step process) and require the Court to find only that the proposed settlement collective is "similarly situated" and the relief is fair and reasonable. *See, e.g., Alvarez v. BI Inc.*, 2020 U.S. Dist. LEXIS 60656, at *9-10 (E.D. Pa. Apr. 6, 2020).

First, the Court must determine that the collective is "similarly situated" such that granting final collective certification for the eight (8) opt-in Plaintiffs is appropriate. *See, e.g., Alvarez,* U.S. Dist. LEXIS 60656, at *9-10 ("Before I discuss approval of the settlement, I must first consider final certification of the collective action."). "Being 'similarly situated' ... means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 226 (3d Cir. 2016) (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012)).

Second, the Court must make a finding that the settlement is fair and reasonable resolution of a *bona fide* dispute. *See Alvarez*, 2020 U.S. Dist. LEXIS 60656. When district courts within the Third Circuit evaluate the fairness of collective action settlements under the FLSA they look to the Eleventh Circuit's seminal decision in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g., Huyett v. Murlin*, 2018 U.S. Dist. LEXIS 108012, at *3 (M.D. Pa. June 28, 2018) (Rambo, J.).   The Eleventh Circuit's opinion in *Lynn's Food Stores* instructs the district court to assess whether the proposed settlement "is a 'fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'" *Huyett*, 2018 U.S. Dist. LEXIS 108012, at *3 (quoting *Lynn's Food Stores*, 679 F.2d 1350, 1355).

In scrutinizing a settlement, "the primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a class action pursuant to Fed. R. Civ. P. 23 ("Rule 23"), on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted). Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after

12

an "opt out" period.    *E.g., Hill v. World Wide Tech. Holding Co., Inc.*, 4:11CV02108 AGF, 2012 U.S. Dist. LEXIS 153264 (E.D. Mo. Oct. 25, 2012) (granting final approval of FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 U.S. Dist. LEXIS 97463 at *5 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353), *see also*, *Williams v. Bethanna*, 2019 LEXIS  7350 at *2-3 (E.D. Pa., January 15, 2019).  "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.*  Court review of an FLSA settlement is two-pronged.  First, the Court must be satisfied that the settlement was the product of "contested litigation."  Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353-1354.  Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354.  If the proposed settlement reflects a reasonable compromise

13

of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*." *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 U.S. Dist. LEXIS 4059 at *5 (D.N.J. Mar. 26, 2012). This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

### i. The Putative Opt-In Collective Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. This Court previously granted Named Plaintiff's request to conditionally certify the following the Class in this litigation: "All resource development specialists and case managers employed by Defendant YWCA of Greater Harrisburg from January 25, 2019, to the present." Because of these key similarities, including job function, location and time frame, the Court may readily conclude the employees are "similarly situated" and grant final certification for purposes of effectuating this Settlement.

14

### ii.    The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case early in the proceedings.   In her Complaint, Named Plaintiff presented detailed allegations regarding Defendant's policies and practices.   In its Answer, Defendant denied Named Plaintiff's material factual allegations and asserted numerous defenses that it argued would defeat Named Plaintiff's and the Plaintiffs' claims in whole or in part.   Through cooperative exchange of payroll data and other relevant job-related information, the Parties extensively investigated Named Plaintiff's claims.   In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA and the risk of not being granted Rule 23 class certification.   The settlement of this lawsuit was achieved only after the exchange of key information on disputed fact issues and the vetting of the Parties' positions through arms-length settlement with the assistance of two magistrate judges and years of discussions between counsel.

### iii. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues.  The first issue is confirming the existence of a *bona fide* dispute between

15

the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Settlement. Both are easily satisfied.

### a. A *Bona Fide* Dispute Existed Between the Parties

Plaintiffs allege Defendant violated the FLSA and Pennsylvania wage law because it allegedly failed to pay them for all hours worked in excess of 37.5 hours each workweek, including for overtime hours worked

Defendant YWCA contends that it paid all amounts due to Plaintiffs for all hours worked, including overtime hours. Defendant denies Plaintiffs' allegations, contends that its policies and practices comply with all applicable laws, and asserts numerous affirmative and other defenses.

If Plaintiffs' allegations ultimately proved correct, Defendant could be faced with the prospect of a substantial monetary verdict exceeding the amount of the Settlement, including additional potential damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Plaintiffs to prosecute the case through trial instead of the comparatively small fees incurred to obtain this early resolution. If Defendant prevailed, then Plaintiffs would obtain no recovery of any kind. The Parties' positions were staked out in the Parties' pleadings, through settlement discussions both privately between counsel and with both Magistrate Judge Bloom and Magistrate Judge Schwab, and the Court should readily conclude a *bona fide* dispute between the parties existed.

16

**b.      The Proposed Settlement Is Fair and Reasonable**

This Settlement was the product of arm's-length negotiations by experienced counsel and compensates the Class for several hours of their alleged unpaid wages *in each workweek* during the applicable time period, free and clear of attorneys' fees and expense.  The Settlement eliminates the inherent risks both sides would bear if this complex litigation continued to resolution by a jury.  As a compromise, and to provide Defendant with the certainty of a ceiling on liability, the Global Settlement Amount is capped at $90,000.00.  Plaintiffs' counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both Plaintiff and Defense witnesses, and because the time upon which the FLSA Settlement Fund is based represents a significant amount of the wages allegedly due to the Class members as represented by the Class members allegations.  In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a jury trial.  Under these circumstances, a presumption of fairness should attach to the Settlement.  *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness).  Several specific factors confirm the Settlement's fairness and reasonableness:

17

### 1.    Public Policy Favors Settlements

Public policy favors settlements.  This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation.  *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor").  The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.

### 2.    Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

The Parties disagree about the merits of Plaintiffs' and the Collective Members' claims and the viability of Defendants' defenses.  If litigation continues, Plaintiffs would face many obstacles, including (i) the risk that the case would not be certified for a Rule 23 Class Action; (ii) challenges to proving damages; (iii) risk of decertification; and (iv) the inherent risks of a jury trial.  The proposed Settlement brings immediate monetary value to each of the class members who elect to participate.  Although the recovery at trial potentially could have been greater than sums received under the Settlement Agreement, it is also possible the

18

recovery would have been less, or nothing at all. For instance, Defendant contended that its employees were properly compensated under state and federal law. If the jury were to agree with Defendants, Plaintiffs would likely recover little or nothing.

Moreover, Plaintiffs would have to maintain collective action and obtain Rule 23 Class Certification class to present class-wide claims to a jury. Following Plaintiffs' motion to certify the Rule 23 Class, Defendant would have argued that various differences in job duties and responsibilities preclude class and final collective action certification had litigation continued. Absent settlement, this issue remained uncertain.

In the face of these material disputes, it is significant that this Settlement brings class members meaningful monetary value now, not years from now, and provides certainty regarding the outcome. *In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future."). "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (internal citations omitted).

### 3.    This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial.  Plaintiffs would need to compile and adduce documentary evidence, representative testimony, and possibly expert testimony sufficient to establish liability and damages for the entire class.  Regardless of the outcome at trial, post-judgment appeals would be likely.  Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4.    The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses.  Additionally, the Parties have ample evidence to make an informed assessment of the proposed Settlement.  "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties.  Courts have consistently refused to substitute their business judgment for that of counsel."  *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate.  The Parties respectfully suggest this Court should conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

20

**B.    The Court Should Approve Class Counsel's Separate Award of Attorneys' Fees and Litigation Expenses**

Consistent with the FLSA's provision that successful plaintiffs' counsel be awarded a "reasonable attorneys' fee to be paid by the defendant," *see* 29 U.S.C. § 216(b), the parties have settled the attorneys' fee and cost issue as part of the Settlement Agreement. As noted above, the Global Settlement Amount is capped at $90,000. Within this Separate from and in addition to the significant relief the settlement provides to the opt-in plaintiffs, YWCA has agreed to pay Class Counsel $29,970.00 for their attorneys' fees and to pay Class Counsel $1,447.42 for their litigation expenses. The award of attorneys' fees reflects one-third of the Gross Settlement Amount, a "benchmark" award for wage-and-hour cases. This fee award is a *significant* discount on Class Counsel's lodestar — it represents just twenty-seven (27) percent of Class Counsel's lodestar.[2] Under the circumstances, the parties' compromise on attorneys' fees and costs should be approved.

**i.    The FLSA Requires a Separate Award of Attorneys' Fees**

As Plaintiffs' lodestar analysis below makes clear, Class Counsel invested significant resources for over two (2) years to obtain near make-whole relief for the opt-in plaintiffs. That Class Counsel's request for fees and costs exceeds the recovery for the collective is both common and expected in prosecuting claims

---

[2] Using the lodestar method, Class Counsel calculates its fee at $110,300.

enforced by the FLSA's Section 16(b).  This case exemplifies why the FLSA contains an attorneys' fee shifting provision.

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Unlike most fee-shifting statutes, the attorneys' fee award under the FLSA is mandatory.  *Compare* 29 U.S.C. § 216(b) (a court "shall" award fees) *with* 42 U.S.C. § 1988(b) (a court "may" award fees "in its discretion").  The "case law construing what is a 'reasonable' fee applies uniformly" to all federal fee-shifting statutes.  *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

To encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, *see Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 709-10 (1945), Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonable attorney's fees and costs.  *See* 29 U.S.C. § 216(b).  Thus, a prevailing plaintiff in a FLSA case is entitled to a reasonable award of attorneys' fees and costs.  *See Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011) (approving fee award larger than damages obtained).  A plaintiff's counsel who successfully pursues wage and hour claims "must be adequately compensated for their efforts," otherwise "wage and hour abuses would go without remedy because attorneys would be unwilling to

22

take on the risk." *Prasker v. Asia Five Eight LLC*, No. 08-CV-05811, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 6, 2010); *see also Sand v. Greenberg*, No. 08-CV-07840, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out the public policy of the FLSA. *Andersen v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy"); *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 U.S. Dist. LEXIS 56501, at *20 (D. Neb. Apr. 18, 2013) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process…")."The FLSA is a uniquely protective statute" and its "remedial purpose [is] to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 207 (2d Cir. 2015).

The Court should approve Class Counsel's request for attorneys' fees and litigation expenses pursuant to the parties' compromise on the issue.

### a. Class Counsel's Request for Attorneys' Fees of One-Third of the Gross Settlement Amount is Reasonable

Under Third Circuit precedent, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the

23

percentage-of-the-recovery approach. *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp*., 455 F.3d 160, 164 (3d Cir. 2006). Under the common-fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005). When calculating attorneys' fees in common-fund cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). "In the Third Circuit, the percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Sakalas v. Wilkes-Barre Hosp. Co.,* 2014 U.S. Dist. LEXIS 63823, at *9 (M.D. Pa. May 28, 2014) (Mariani, J.) (citing *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 300 (3d Cir. 2005)). The percentage-of-the-fund-method is the "prevailing methodology used by courts in the Third Circuit in wage and hour cases." *Id*. The Third Circuit has identified two rationales supporting application of the percentage of the fund method in class cases. First, it "ensur[es] that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 198 (3d Cir. 2000). Second, it "encourage[s] early settlements

24

by not penalizing efficient counsel" because it aligns Class Counsel's financial interests with those of class members. *Id*.

The Third Circuit has developed ten factors—the so-called *Gunter* and *Prudential* factors—that district courts should evaluate in awarding attorneys' fees from a common fund: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); Galt, 310 F. Supp. 3d at 497 (noting that court's analysis of fee request under percentage method is guided by *Gunter* factors). The Third Circuit has stressed that these factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may

25

outweigh the rest." *In re Rite Aid Corp. Sec. Litig.*, 396 F. 3d 294, 301 (3d Cir. 2005).

These factors support approval of the requested fee and are discussed below.

### 1. The Size of the Fund Created and the Number of Beneficiaries, as Well as the Value of the Benefits Supports the Requested Fee

"As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663 *54 (D.N.J. April 8, 2011) (citing *In re Cendant Corp. Prides Litig.*, 243 F. 3d 722, 736 (3d Cir. 2002)). "This inverse relationship rests on the assumption that the increase in a recovery's size is often due to the size of the class and not the efforts of counsel." *Altnor,* 197 F. Supp. 3d at 765 (citing *In re Prudential,* 148 F. 3d at 339).

The Settlement achieved in this case does not create a "mega-fund." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *54-55; *see also Cendant*, 243 F.3d at 736-37. Moreover, the results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. To participate in the settlement, class members do not need to do anything — there is no claims process. The settlement provides for a $90,000.00 Gross Settlement Amount to pay collective members and to pay Class Counsel's fees and expenses. The Fund represents payment of unpaid wages, including regular and overtime wages for all hours worked by Plaintiffs in excess of thirty seven and one-half hours (37.5)

hours during the relevant period. The net fund of $58,582.58 will be allocated to the Plaintiffs.

Class Counsel calculates that, after accounting Class Counsel's fees and expenses, the average Collective Member settlement payment from the net settlement fund will be $7,322. Each Class Member's individual settlement payment was determined on a *pro rata* basis by the total number of workweeks each Class Member worked for the YWCA during the relevant periods.

All settlement award determinations are based on payroll and timekeeping records for Plaintiffs produced by Defendant. These timekeeping records were analyzed by Class Counsel prior to entering into this settlement. This average payment to each Settlement Class Member of $7,322 is significant and meaningful to each of these workers. *See* Order Granting Motion for Settlement and Attorney Fees and Motion for Settlement Approval, *Shatzer v. Springwood Hospitality, LLC*, No. 1:24-cv-1244 (M.D.Pa. February 12, 2026) ECF Nos. 37-41. (approving FLSA settlement which paid an average award of $439.43 to each collective member).

Additionally, this Settlement allows the Plaintiffs to avoid the inherent risks associated with continuing litigation of this matter. Had this litigation proceeded, Defendant would assert defenses to liability which could result in the Plaintiffs

27

receiving a less favorable recovery than they have here or, in the worst-case scenario, receive no recovery at all.

The outlined values of the settlement to these class members substantially outweighs the risks associated with continuing litigation, and the size of the average payment received by each class member satisfies these factors.

### 2. The Skill and Efficiency of Class Counsel that Enabled them to Obtain this Result, the Complexity of the Litigation, and the Risk of Nonpayment Support the Requested Fee

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Galt v. Eagleview Hospital*, 310 F. Supp. 3d 483 at 497 (E.D.Pa. Apr. 19, 2018) (citing *Nichols v. SmithKline Beecham Corp.*, No. CIV.A.00-6222, 2005 U.S. Dist. LEXIS 7061, at \*71 (E.D. Pa. Apr. 22, 2005); *In re Cendant Corp. Litig.*, 264 F. 3d 201, 256 (3d Cir. 2001)). Here, Class Counsel includes two attorneys – Derrek W. Cummings, and Michael J. Bradley – with significant experience in employment law, and more specifically experience in prosecuting class- and collective-action wage-and-hour actions under the FLSA and similar state wage-and-hour laws. The Settlement reached with Defendant here involves complex provisions that are specific to the FLSA.

28

Accordingly, this factor favors the requested fee. See *Galt*, 310 F. Supp. 3d at 497-98 (finding that "Class Counsel in this matter has requisite experience handling complex wage and hour class actions, and they have represented the Plaintiffs and the prospective class competently and diligently throughout the course of this litigation" weighed in favor of awarding 35% fee).

The Settlement reached in this action was reached after months of arm's length settlement negotiations. On February 19, 2025, the Parties attended a settlement conference before Judge Bloom. While the settlement conference did not result in resolution of the matter, despite the Parties' best efforts, counsel continued to discuss settlement. Following the conference, the parties exchanged additional written discovery. On October 2, 2025, at the request of the Parties, the case was referred to Judge Schwab for attendance at a second settlement conference. An initial telephone conference was held between counsel and Judge Schwab on November 20, 2025, at which Counsel for the Parties discussed their respective settlement positions in detail. Thereafter, Counsel conferred with their respective clients and among each other and a second status conference was held with Judge Schwab on January 7, 2026, to further discuss settlement. Soon thereafter, and with the assistance of Judge Schwab, a agreement for settlement was reached on January 14, 2026. The attorneys who negotiated this agreement are

29

experienced wage and hour litigators and vigorously represented their clients' respective interests.

Additionally, Class Counsel took this case on a contingency fee and, in doing so, assumed the risk of non-payment following the expenditure of significant time to the matter. *Ex*. 3 at ¶ 5. This, on its face, weighs in favor of the requested fees. *See Maddy v. Gen. Elec. Co.*, 2017 U.S. Dist. LEXIS 98802 at *21 (D.N.J. June 26, 2017) (finding *Gunter* factors satisfied, and granting 33.5% fee, noting that the "issues in this case were thoroughly contested and this matter was 'hard-fought' by skilled, professional counsel" that the case was brought to a close prior to trial, and that "[s]imply stated, class counsel took this case on a pure contingency basis, waiving recoupment of all costs"); *Galt,* 310 F. Supp. 3d at 498 (fact that class counsel took case on a contingent fee basis facing the risk of non-payment if they failed to obtain an adequate recovery yet devoted significant time to the matter, weighed in favor of awarding 35% fee).

### b.  The Awards in Similar Cases Supports the Requested Fee

The requested fee of one-third of the Gross Settlement Fund is consistent with awards in similar cases and is the "benchmark" percentage for awarding fees in the Third Circuit. Our courts have observed that "a benchmark of one-third of the settlement fund is often appropriate." *Tompkins* v. *Farmer's Ins. Exch.,* 2017 U.S. Dist. LEXIS 158478 at *28 (E.D. Pa. Sept. 27, 2017); *Fein v. Ditech Fin.,*

*LLC*, No. 5:16-CV-00660, 2017 U.S. Dist. LEXIS 158479 at *34 (E.D. Pa. Sept. 27, 2017) (referring to class counsel's request for one-third of the fund as "a middle-of-the-road figure as compensation" and noting that "courts often find a benchmark of one-third of the settlement fund appropriate").

Here, Class Counsel's "benchmark" one-third fee of $29,970.00 results in approximately $58,582.58 being distributed to class members, less expenses of $1,447.42. Though one-third of the fund is the benchmark, district courts in the Third Circuit have commonly awarded higher percentages in wage and hour cases.[3] That district courts in similar cases in this Circuit have awarded higher percentages supports Class Counsel's requested one-third fee.

Accordingly, the fees approved in similar cases further support the requested fee here.

---

[3] *Rouse v. Comcast Corp*., 2015 U.S. Dist. LEXIS 49347, at *34 (E.D. Pa. Apr. 15, 2015) (in wage and hour case, "Class Counsel's requested fee award represents approximately 35% of the common fund created by the Settlement Agreement . . . This at the high end of the range; however, it is consistent with fee awards approved in this Circuit and in the country for similar wage and hour cases."); *Galt v. Eagleville Hosp*., 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018) (in wage and hour case, granting fee award of "approximately 35% of the common fund"); *Southwood v. Milestone Mgmt. PA- Feasterville, LLC*, 2020 U.S. Dist. LEXIS 169312, at *14 (E.D. Pa. Sept. 15, 2020) (awarding fee in the amount of 35% of the settlement amount).

### c. The Court Should Approve Class Counsel's Reasonable Litigation Expenses

As part of the stipulated fee and cost award, Class Counsel seeks reimbursement of $1,447.42 in advanced litigation costs from the settlement fund. These expenses — which include only a filing fee, and the purchase of Named Plaintiff's deposition transcript — were reasonably and necessarily incurred in connection with prosecuting the litigation and Class Counsel made concerted efforts to keep these costs as minimal as possible. These expenses are of the type and character frequently reimbursed from settlement funds in class action litigation. *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002) ("Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case."). Class Counsel respectfully requests the Court grant reimbursement of Class Counsel's advanced litigation costs in the amount of $1,447.42.

## V. CONCLUSION

Based on the foregoing, Class Counsel respectfully requests the Court grant final approval of the collective action settlement and approve the requested attorneys' fees and litigations costs and expenses.

Respectfully Submitted:

**WEISBERG CUMMINGS, P. C.**

Date: <u>April 30, 2026</u>   <u>*/s/ Michael J. Bradley*</u>
            Michael J. Bradley

            <u>*/s/ Derrek W. Cummings*</u>
            Derrek W. Cummings

            2704 Commerce Drive, Suite B
            Harrisburg, PA 17110
            Phone: (717) 238-5707
            Fax: (717) 233-8133
            *Counsel for Plaintiffs*

## CERTIFICATION OF WORD COUNT
## PURSUANT TO FED. R. CIV. P. 11 AND L.R. 7.8(B)(2)

The undersigned, as counsel for Plaintiff, hereby certifies that the foregoing Brief does not exceed 7,250[4] words, and in submitting this certification, counsel has relied upon the word count feature of the word processing system used to prepare the Brief.  According to the word processing system used to prepare the Brief, the actual number of words in the Brief is 7,191.

**WEISBERG CUMMINGS, P.C**.

April 30, 2026
Date

/*s/* Michael J. Bradley
Michael J. Bradley

---

[4]Middle District L.R. 7.8(b)(2) disallows the filing of any brief in excess of 5,000 words without prior authority of the Court. By Order of this Court, ECF No. 95, Plaintiff was authorized to file this Brief with no more than 7,250 words.

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

*/s/ Michael J. Bradley*
Michael J. Bradley